**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 03-241 JJF |
| | : | |
| CANON, INC., CANON U.S.A., INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON
MOTION OF ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC.
FOR SANCTIONS AGAINST THE FUJI DEFENDANTS;**

**DENIAL OF SANCTIONS RECOMMENDED**

This matter comes before me, as Special Master, on the motion of plaintiff St. Clair Intellectual Property Consultants, Inc. ("St. Clair") for the imposition of sanctions against defendants Fuji Photo Film Co. Ltd., Fuji Photo Film U.S.A., Inc., and Fuji Film America, Inc. (collectively, "Fuji"), and/or their counsel.

The Special Master recommends that St. Clair's motion for sanctions against Fuji be **DENIED,** as set forth herein.

**BACKGROUND**

This is a patent infringement case[1] brought by St. Clair against multiple defendants, including Canon, Inc. and Canon U.S.A., Inc. (collectively, "Canon") and Fuji.[2] The issue of Fuji's infringement has been tried to a separate jury, which returned a verdict of $3,003,465.00

---

[1] The patents-in-suit are United States Patent Nos. 5,138,459; 6,094,219; 6,233,010; and 6,323,899.

[2] At the time the suit commenced, camera manufacturers Casio, Epson, Kyocera, Minolta, Nikon, Olympus and Seiko Epson were also named as defendants. As a result of prior settlements, none of these are implicated in St. Clair's motion for sanctions.

million in favor of St. Clair. D.I. 926. For reasons that will be explained later herein, the verdict has not been reduced to final judgment.

## The Ownership Defense

Among the matters pending before the Court is an "ownership defense" that asserts St. Clair, as assignee of the inventors, does not have standing to sue for infringement because the patents-in-suit were invented during the course of the inventors' employment with Mirage Systems, Inc. ("Mirage") and are rightfully the property of Mirage. Mirage is not a party to the litigation, but is an indisputably critical fact witness with respect to the ownership defense.[3]

Canon developed the legal arguments that support the ownership defense, with factual support provided by employees of Mirage. Based on those arguments, Canon filed a motion to dismiss St. Clair's complaint arguing that St. Clair lacks standing to prosecute and the Court lacks subject matter jurisdiction over this patent infringement action, because Mirage rather than St. Clair owns the patents-in-suit (the "Ownership Defense Motion"). D.I. 612-13. Canon supported its Ownership Defense Motion with declarations provided by Mirage employees. D.I. 614-16. Fuji filed a one-page motion to join in the Ownership Defense Motion filed by Canon. D.I. 604.

Upon its consideration of the Ownership Defense Motion, the Court declined to summarily dismiss St. Clair's claims, denied the Ownership Defense Motion, D.I. 812, and scheduled issues raised by the ownership defense for trials on the merits that were set to follow the separate infringement trials against Canon and Fuji.

---

[3] In their papers, the parties sometime refer to this as the "standing defense" and, therefore, refer to what has been designated the "Ownership Defense Motion" herein as the "Standing Motion" instead. Irrespective of the terms used, the Special Master and parties are referring to the motion papers filed by Canon that are docketed at D.I. 612-13.

2

## The Canon/Mirage Consulting Agreement[4]

On September 30, 2004, during the infringement trial against Canon, the Court and St. Clair learned for the first time of the existence of a previously undisclosed agreement between Canon and Mirage. According to the affidavit submitted by St. Clair's counsel, Becky Thorson, Canon's counsel handed a copy of an agreement to her during a recess that followed the close of St. Clair's case-in-chief, as Mirage employee George Moussally was about to take the stand for Canon. D.I. 890 at p. 829. The Agreement, entitled The Consulting Agreement and Covenant Not to Sue, by and between Canon and Mirage, is dated April 30, 2004 (the "Consulting Agreement").

Under the terms of the Consulting Agreement, Mirage agrees *inter alia* not to sue Canon for infringement in the event that Canon succeeds in establishing Mirage as the owner of the patents-in-suit, in exchange for a lump sum payment of $75,000 from Canon to Mirage within five days after execution of the Agreement. The Consulting Agreement further provides that Mirage "shall cooperate and provide assistance to Canon" in determining whether Mirage has ownership of or rights in the patents-in-suit. Specifically:

> **Mirage shall cooperate and provide assistance to Canon** in determining whether Mirage has ownership or other rights in the Patents and/or the Family of Patents, including, but not limited to, at Canon's request, **searching for and providing necessary documents and records, providing testimony in court and by deposition, locating and identifying additional resources that may aid in establishing Mirage's ownership of the Patents** and/or the Family of Patents, **and any other reasonable efforts** necessary to assist in determining whether Mirage has ownership rights in the Patents and/or the Family of Patents ("Consulting Obligations").

---

[4] The Special Master finds it necessary to explicate only undisputed facts presently of record relevant to the limited issue *sub judice* of whether to grant St. Clair's motion for sanctions against the Fuji defendants.

Consulting Agreement ¶ 2.1 (emphasis added) [attached hereto as Exhibit A]. The Consulting Agreement also provides that Mirage shall be "reimbursed" – with invoicing and payment structured through Canon's counsel – for certain expenses and "lost time" associated with its employees' efforts in fulfilling its Consulting Obligations under the Consulting Agreement:

> 6.2   In consideration of the forgoing, Canon further agrees to compensate Mirage for its reasonable travel expenses, office expenses (e.g., copying, postal, phones) **and reimbursement for lost time that may be incurred in connection with this Agreement**. Mirage agrees to provide invoices and supporting documentation to Canon, c/o Kramer Levin Naftolis & Frankel, Attention Donald L. Rhoads, 919 Third Avenue, New York, NY 10022, outlining expenses incurred at Mirage's actual cost.
>
> 6.3   **The reimbursement for lost time for any Mirage employees in connection with this Agreement is $300 per hour**.

Consulting Agreement, Exh. A at ¶¶ 6.2-6.3 (emphasis added). These provisions obligated Canon to pay Mirage – a fact witness – the amount of $167,693.97 (the $75,000 lump sum and $92,693.97 in "lost time" consulting fees) by the time the agreement came to light on September 30, 2004.[5]

## Trial Interrupted

Upon learning of the Consulting Agreement, St. Clair immediately brought it to the attention of the Court, moving to strike the ownership defense as a sanction under Fed. R. Civ. P. 37 for Canon's and Fuji's alleged failure to disclose the existence of the Consulting Agreement during discovery. St. Clair argued that it had propounded numerous Interrogatories and Requests for Production on Canon and Fuji regarding the patents-in-suit, as to which the negotiation, existence, payments made under, and production of the Consulting Agreement would have been

---

[5]   As set forth in greater detail in the Special Master's Report and Recommendations on Motion of St. Clair Intellectual Property Consultants, Inc. for Sanctions Against the Canon Defendants, filed contemporaneously herewith, the value of the Consulting Agreement to Mirage is potentially far greater if the ownership defense is successful in establishing that Mirage is the true owner of the patents-in-suit. In several infringement actions to date, these patents have generated infringement verdicts in excess of $60 million.

4

responsive. St. Clair's argument continued that, although the Consulting Agreement was executed shortly after the close of discovery, neither Canon nor Fuji supplemented its discovery responses as required under Fed. R. Civ. P. 26(e) to disclose information about the Consulting Agreement. D.I. 890 at 829-830:1-12. Pending its decision on St. Clair's motion to strike, the Court severed the trial on Canon's ownership defense from the Canon infringement trial in progress. D.I. 890 at 854:23-25 and 855:6-8.

Upon learning of the Consulting Agreement, St. Clair demanded to know what Fuji knew about it and when Fuji learned of it. September 30, 2004 E-mail from Ronald J. Schutz, Esquire to Steven J. Routh, Esquire ("What did you know and when did you know it?"). Fuji admitted that it learned, in early June of 2004, only that Canon had obtained a license from Mirage that would become operative in the event that the ownership defense succeeded in establishing Mirage as the true owner of the patents-in-suit. September 30, 2004 and October 1, 2004 Responsive E-mail from Routh to Schutz.

St. Clair then moved to sever the ownership defense from Fuji's subsequently scheduled infringement trial. D.I. 867. At the pretrial conference held one week later, "Fuji advised the Court that it did not object to St. Clair's request, and the Court then severed Fuji's ownership defense for resolution at a later date." Fuji's Answering Brief in Opposition to St. Clair's Renewed Submission to the Special Master in Support of a Finding that Fuji Should Have Disclosed Material Information About Mirage Before September 30, 2004 and For Sanctions Against Fuji, dated July 1, 2005 ("Fuji's July 1, 2005 Answering Brief") at p. 6.

The Court also ordered discovery before the Special Master on the issues of whether the production of the Consulting Agreement and related discovery was timely made and, if not, what if any sanction should be imposed.

5

**Discovery Under Auspices of Special Master**

The additional submissions to and proceedings before the Special Master were not docketed as part of the official record in this case and, therefore, merit summarization and explication for the Court's and the parties' consideration of the Special Master's Report and Recommendations herein.

The discovery ordered by the Court against Canon, Fuji and Mirage proceeded before the Special Master with a focus on the negotiation, creation, drafting, operation and/or ultimate production of the Consulting Agreement. Because both Canon and Fuji asserted attorney-client and/or work product privilege with respect to certain documents and communications responsive to St. Clair's discovery requests, the Special Master – following argument, briefing, and *in camera* review of all communications as to which privilege was asserted – issued, under seal, the "Findings and Order of Special Master on Discovery of Documents and Communications Relating to Consulting Agreement" dated March 15, 2005 (the "March 15, 2005 Special Master's Order").[6]

As set forth in that Order, the Special Master determined that there was no basis whatsoever to find the protections of the attorney-client and/or work product privileges asserted by Fuji to be either inapplicable or waived. March 15, 2005 Special Master's Order at p. 16 ("[T]he Special Master concludes that there is not even a "primitive showing" that Fuji fraudulently intended to abrogate its discovery obligations." (citing *RCA Corp. v. Data General Corp.*, C.A. No. 84-270-JJF at *4 (D.Del. Oct. 27, 1986) (Farnan, J.) [available as 1986 WL 15684] ("To meet its burden of establishing a prima facie case of common law fraud, [movant]

---

[6] The March 15, 2005 Special Master's Order issued to St. Clair, Canon and Fuji "under seal." A copy has been produced to the Court as sealed Exhibit 2 to the Special Master's Report and Recommendations on Motion of St. Clair Intellectual Property Consultants, Inc. for Sanctions against the Canon Defendants, entered contemporaneously herewith.

was required to adduce only a primitive showing of fraudulent intent.")).  The Special Master
therefore held:

> Although St. Clair may pursue discovery against Fuji to probe
> Fuji's involvement or acquiescence in Canon's challenged conduct,
> it must do so without access to Fuji's privileged communications
> and its attorneys' work product.

March 15, 2005 Special Master's Order at p. 16.

With respect to Canon, the Special Master concluded that the attorney-client and work
product privileges asserted by Canon were inapplicable and/or had been waived.  March 15
Special Master's Order at p. 37.  Therefore, St. Clair was permitted to obtain discovery relating
to the Consulting Agreement from Mirage, Fuji and its counsel, and Canon and its counsel, with
access to Canon's formerly privileged communications and its attorneys' work product.

## Findings of Fact

Through the discovery process, St. Clair developed, and the Special Master finds, the
following facts relative to Fuji:

- **Joint Defense Agreement** – Fuji's claim of "joint defense" privilege in objecting
  to certain discovery is supported by a written, confidential, joint defense
  agreement entitled the "Common Interest Agreement," executed in June of 2003
  by a number of the original defendants in this action, including Canon and Fuji.
  Deposition Transcript of Steven J. Routh, Esquire ("Routh Dep. Tr.") at 19:3-25
  to 20:1-2.  The Special Master requested a copy of the Common Interest
  Agreement and reviewed it *in camera*.[7]  The Special Master's review confirmed
  that the provisions of the agreement are in all respects typical of those employed

---

[7] Because the Common Interest Agreement expressly provides that it is confidential – and because some of its signatories are no longer before the Court – the Special Master declines to make the provisions of this document public, except as necessary to address arguments made by St. Clair, Fuji or Canon.  A copy has been produced to the Court – for the Court's eyes only – as sealed Exhibit "B" hereto.

062038.00610/40155848v.1

by defense counsel in multi-party litigations. Reduced to its essence, the agreement provides for the confidential sharing of information and attorney work product among defense counsel – including communications, documents and other information – that relate to the defendants' common interests in defending actual and potential claims asserted by St. Clair. Importantly, the agreement does **not** contain any provision that provides any defendant with control over any other defendant.

- **Fuji's Lack of Knowledge of Consulting Agreement** – On or about June 3, 2004, Canon's counsel confidentially told Fuji's counsel only that Canon had reached an agreement for a "contingency license" from Mirage, to protect Canon from suit in the event that Mirage was found to be the true owner of the patents-in-suit. Routh Dep. Tr. at 10:2-25 to 11:1-2; Declaration of Steven J. Routh, Esquire ("Routh Decl.") at ¶ 6. Although a covenant not to sue is incorporated as one provision of the Consulting Agreement, the unrefuted evidence is that – until the Consulting Agreement was first produced in Court on September 30, 2004 – Fuji had not seen and did not know any of the terms of the Consulting Agreement, including the provisions that create Mirage's paid consulting relationship with Canon. Routh Dep. Tr. at 9:11-22; Routh Decl. at ¶ 7; Declaration of Sten A. Jensen, Esquire at ¶ 5.

- **Fuji's Discussions with Mirage** –Fuji had brief conversations with Mirage on two occasions. In the first conversation – occurring shortly after Canon told Fuji on June 3, 2004 about its contingent license with Mirage – Fuji's counsel contacted Mirage to see if Mirage would be willing to share with Fuji any

8

information about Mirage's agreement with Canon. It is unrefuted that Fuji was
rebuffed in its attempt to obtain additional information from Mirage. Routh Dep.
Tr. at 20:9-20. A second conversation occurred in August 2004, when Mirage
contacted Fuji's counsel to ascertain if Fuji would also be interested in obtaining a
"contingency license". Routh Dep. Tr. at 21:3-10. The unrefuted evidence is that
Fuji did not enter into any license or other agreement with Mirage. Routh Dep.
Tr. at 22:23-25.

## Relief Sought

St. Clair requests in its renewed submission to the Special Master that:

> the Special Master issue a finding that Fuji should have disclosed
> the consulting relationship and related payments and documents
> before September 30, 2004, and recommend that the Court dismiss
> Fuji's ownership defense and award St. Clair's attorneys' fees and
> costs incurred as a result of the failure by Fuji to disclose the
> Consulting Agreement, in addition to any other sanctions the Court
> deems just.

St. Clair's Renewed Submission to the Special Master in Support of a Finding that Fuji Should
Have Disclosed Material Information About Mirage Before September 30, 2004 and for
Sanctions Against Fuji, dated June 10, 2005 ("St. Clair's June 10, 2005 Renewed Submission") at
p. 4.

## DISCUSSION

## Legal Standard

St. Clair seeks the dismissal of Fuji's ownership defense, pursuant to Fed. R. Civ. P. 26
and 37, as sanction for Fuji's alleged discovery violations. Dismissal of a claim or defense for an
alleged discovery abuse is an "extreme" sanction. *National Hockey League v. Metropolitan
Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2278, 2781 (1976); *accord, Poulis v. State Farm
Fire and Casualty Co.*, 747 F. 2d. 863, 867-68 (3d. Cir. 1984).

9

In *Societe Internationale,* the Supreme Court reversed the dismissal of an action as a

sanction under Fed. R. Civ. P. 37, holding that Rule 37:

> should not be construed to authorize dismissal of [a] complaint
> because of petitioner's noncompliance with a pretrial production
> order **when it has been established that failure to comply has
> been due to inability, and not to willfulness, bad faith, or any
> fault of petitioner.**

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357

U.S. 197, 212, 78 S. Ct. 1087, 1096 (1958) (emphasis added). The Supreme Court concluded

that the sanction of dismissal was inappropriate where a *Societe Internationale* party's

noncompliance was due to inability, since the party could not produce documents that were

confidential under foreign law. *Id.*

The Supreme Court's subsequent decision regarding the appropriateness of dismissal as a

sanction, in *National Hockey League,* further clarified that a party's deliberate bad behavior is

required as a predicate to the imposition of this ultimate sanction. In *National Hockey League,*

the Supreme Court considered the following district court record:

> After seventeen months were crucial interrogatories remained
> substantially unanswered despite numerous extensions granted at
> the eleventh hour and, in many instances, beyond the eleventh
> hour, and notwithstanding several admonitions by the Court and
> promises and commitments by the plaintiffs, **the Court must and
> does conclude that the conduct of the plaintiffs demonstrates
> the callous disregard of responsibilities counsel owed to the
> Court and to their opponents. The practices of the plaintiffs
> exemplify flagrant bad faith** when after being expressly directed
> to perform an act by a date certain, . . . they failed to perform and
> compounded that noncompliance by waiting until five days
> afterwards before they filed any motions. Moreover, this action
> was taken in the face of warnings that their failure to provide
> certain information could result in the imposition of sanctions
> under Fed. R. Civ. P. 37. If the sanction of dismissal is not
> warranted by the circumstances of this case, then the Court can
> envision no set of facts whereby that sanction should ever be
> applied.

10

*National Hockey League*, 427 U.S. at 640-641 (citations omitted).  The Supreme Court held that the district court did not abuse its discretion by dismissing the underlying action for plaintiffs' failure to comply with discovery orders, concluding that "the extreme sanction of dismissal was appropriate in this case by reason of [plaintiffs'] 'flagrant bad faith' and their counsel's 'callous disregard' of their responsibilities."  427 U.S. at 643.

St. Clair must therefore demonstrate – as a threshold matter – that Fuji acted in deliberate bad faith and/or in callous disregard of its discovery responsibilities before St. Clair can seek the dismissal of Fuji's ownership defense as sanction.  *Donnelly v. Johns-Manville Sales Corp.*, 677 F. 2d 339, 342 (3d 1982) ("dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the [party]").  It is against this standard that the Special Master analyzes Fuji's conduct.

**Conclusion Regarding Fuji's Discovery Responses to Interrogatories**

First, St. Clair argues that Fuji failed to timely supplement its responses to several specific discovery requests as required under Fed. R. Civ. P. 26(e), including St. Clair's Interrogatories numbered 4, 7, 13, 17, 18 and 19.[8]  According to St. Clair, Fuji was "duty bound not to conceal relevant information" and "the failure of Fuji to supplement [its responses to] St. Clair's discovery requests to disclose the existence of the consulting relationship is a clear violation of Fuji's discovery obligations."  St. Clair's June 10, 2005 Renewed Submission at p. 15.

In so arguing, St. Clair attempts to recharacterize Fuji's limited knowledge that Canon had taken a "contingency license" from Mirage into knowledge that a consulting relationship existed between Canon and Mirage.  As the Special Master has already found, the unrefuted

---

[8]  St. Clair states in a conclusory manner that Fuji failed to supplement its responses to St. Clair's Interrogatories 4, 7, 13, 17, 18 and 19, but discusses Fuji's asserted failures only with respect to Interrogatories 4 and 18.

11

evidence is that Fuji only had knowledge of the contingency license.   Additionally, St. Clair

misstates Fuji's obligations in responding to discovery.   The Federal Rules of Civil Procedure

provide that:

> Parties may obtain discovery regarding any matter, **not privileged**,
> that is relevant to the claim or defense of any party, including the
> existence, description, nature, custody, condition, and location of
> any books, documents, or other tangible things and the identity and
> location of persons having knowledge of any discoverable matter.

Fed. R. Civ. P. 26(b)(1) (emphasis added).   The provision protects privileged information from

disclosure and is germane in analyzing Fuji's discovery responses and its duty to supplement

them.

In responding to St. Clair's interrogatories, Fuji expressly objected to each interrogatory

to the extent that it sought privileged information.   For example, Fuji responded as follows to

Interrogatory No. 18:

### Interrogatory No. 18:

Identify   and   describe   in   detail   all   contacts   or
communications you have had with any of the other named
defendants or any third party, including legal counsel, regarding
the subject matter of this lawsuit, including, without limitation, the
St. Clair Property Consultants, Inc. v. Sony et al., case, Civil
Action No. 01-557, or the St. Clair patents, including the other
defendant or third party contacted, the dates, locations, mode of
such contact or communication (e.g. telephonic, in person,
facsimile, e-mail, letter, etc.).

### Fuji's Response:

**Fuji objects to this interrogatory on the ground that it
seeks information protected from disclosure by the attorney-
client privilege, the joint defense or common interest privilege
and/or the attorney work product doctrine.**  Fuji also objects to
this interrogatory on the ground that it is vague and ambiguous
with respect to the term "contact."  Fuji further objects to this
interrogatory on the ground that it is overbroad, unduly
burdensome and oppressive.

12

>           Subject to and without waiving the foregoing General and
>       Specific objections, Fuji identifies the following contact:
>       [response goes on to provide details of contact between Sony and
>       Fuji "regarding the fact that St. Clair sued Sony"].

Responses and Objections of Fuji Defendants to Plaintiff St. Clair's First Set of Interrogatories,

Dated July 21, 2003 (emphasis added).

St. Clair does not assert that Fuji's responses were inaccurate or incomplete when they

were served in July 2003. Nor does St. Clair argue that Fuji's objections were improperly

asserted. Rather, the crux of St. Clair's argument is that Fuji failed to update its responses after it

learned in June 2004 of the contingent licensing agreement between Canon and Mirage, and that

Fuji failed to disclose the brief contacts between Fuji's counsel and Mirage in June and August

2004.

The Special Master has carefully reviewed St. Clair's interrogatories, and Fuji's responses

thereto. Fuji's objections and responses to the interrogatories propounded by Canon preserved

Fuji's objections to the production of any privileged information. The Special Master therefore

concludes that Fuji was entitled to withhold from disclosure, as protected work-product, the

limited conversations between its counsel and Mirage that occurred approximately a year after

Fuji served its discovery responses. Fuji was not required to supplement its responses to disclose

that which was protected from disclosure.

Second, the Special Master also concludes that Fuji was entitled to withhold from

disclosure, under the joint defense and/or common interest privilege, the limited information

Canon had shared with Fuji –that Canon had taken a contingent license from Mirage in the event

that the ownership defense was successful – because this information was shared in the context

of discussing a possible joint ownership defense. Routh Decl. at ¶ 6. Pursuant to the terms of

the Common Interest Agreement executed by Fuji and Canon in June 2003, Fuji was

13

contractually obligated to keep this information confidential. Under well-settled law, a party's inability to comply with a pretrial production order cannot result in the dismissal of a claim as sanction, where the party was unable to comply because it could not disclose confidential information. *Societe Internationale*, 357 U.S. at 212, 78 S. Ct. at 1096.

In sum, the Special Master concludes that Fuji fully complied with its discovery obligations with respect to supplementation under Fed. R. Civ. P. 26(e), because St. Clair has failed to identify any non-privileged information that was in Fuji's possession sufficient to trigger Fuji's duty to supplement its responses to the discovery propounded by St. Clair.

## Conclusion Regarding Fuji's Review of Draft Affidavits

Fuji's privilege log reflects that, in June 2004, Canon transmitted to Fuji drafts of declarations by Mirage employees that Canon intended to use as support for the Ownership Defense Motion. St. Clair argues that "Fuji reviewed draft declarations from Mirage principals in early June [2004], and never disclosed these witness contacts and statements to St. Clair or the Court. Fuji relied on the fruits of the Consulting Agreement by joining Canon in its motion to dismiss, which attached Canon's paid-for declarations." St. Clair's June 10, 2005 Renewed Submission at p. 2.

As previously discussed, the record does not support St. Clair's implied premise that Fuji knew about the Consulting Agreement and/or the paid consulting arrangement between Canon and Mirage. Rather, the evidence clearly establishes that Fuji's counsel had no contact with the declarants and did not disclose the draft declarations supplied by Canon because he considered them to be privileged documents. Routh Dep. Tr. at 37:1-16.

The Special Master concludes that, under well settled law, the draft declarations provided by Canon to Fuji were protected from disclosure by both the work product privilege and the

14

common interest or joint defense privilege. *Chan v. City of Chicago*, 162 F.R.D. 344, 345-56 (N.D. Ill. 1995) (finding work product and joint defense privileges applicable to draft affidavit); *accord, Chalimoniuk v. Interstate Brands Corp.*, C. No. IP01-0788-C-T/K at \*2-4 (S.D. Ind. 2002) (Baker M. J.) [available as 2002 WL1048826] (finding draft declaration protected by work product and joint defense privileges).

Because the draft declarations provided to Fuji by Canon in June 2004 were protected from disclosure under both the work product and joint defense privileges, the Special Master concludes that Fuji was not required to supplement its discovery responses to disclose them.

## Conclusion Regarding Fuji's Response to St. Clair's August 13, 2004 Letter[9]

St. Clair also argues that an August 13, 2004 letter, sent by its counsel to counsel for both Canon and Fuji, constituted a specific request for "line-item supplementation" of the discovery responses referenced in the letter, and that Fuji's response to the letter was misleading and intended to conceal relevant information. St. Clair's June 10, 2005 Renewed Submission at p. 15.

While the Ownership Defense Motion was pending, St. Clair requested the disclosure and production of any agreements that Canon and/or Fuji had with Mirage. In an August 13, 2004 letter from St. Clair's counsel directed jointly to Canon's and Fuji's counsel, St. Clair specifically requested any agreements between either Canon or Fuji and Mirage or any person who submitted an affidavit in support of the Ownership Defense Motion.

Specifically, St. Clair asked for disclosure of "any retainer, reimbursement, payment, license agreement, purchase agreement, assignment or other financial or business relationship."

---

[9] St. Clair also initially asserted that Fuji failed to supplement its discovery responses in response to a second letter from St. Clair's counsel, dated September 23, 2004. In later briefing, St. Clair seemingly, and wisely, abandoned that argument. St. Clair's September 23, 2004 letter was addressed to Canon's counsel, not Fuji's counsel. It sought information specific to Canon. As to Fuji, the questions posed would have been new. Because discovery had closed 6 months earlier, St. Clair could not pose new interrogatories to Fuji by simply referring to them as supplementation.

15

August 13, 2004 Letter from Becky Thorson, Esquire to John Daniel, Esquire and Vito DeBari, Esquire (Canon's counsel) and Steven Routh, Esquire and Sten Jensen, Esquire (Fuji's counsel) ("This information is discoverable (and should have been produced months ago) pursuant to at least St. Clair's Interrogatory Nos. 4, 7, 13, 17, 18, and 19, and St. Clair's Requests for Document Request Nos. 1, 22, 28, 29, 37, 42 [and] 59. Please provide all responsive information and produce these documents by end of business August 17, 2004.").

Fuji's counsel responded by e-mail. The relevant portion of that response follows:

> I have looked into the issue raised in your letter carefully and determined that **we have complied with our discovery obligations** and do not have any documents or information that needs to be produced in the areas covered by your letter, consistent with those obligations.

August 17, 2004 E-mail from Steven J. Routh, Esquire to Becky R. Thorson, Esquire (emphasis added).

As an initial matter, St. Clair takes issue with the fact that Fuji e-mailed its proposed response to Canon, before responding to St. Clair. St. Clair reads into this that Fuji was also suggesting Canon's response to the letter, thereby "orchestrating" the continued concealment of the Consulting Agreement. The Special Master concludes that, to the contrary, Fuji provided Canon with its proposed response because the joint defense agreement specifically requires signatories to notify another defendant signatory with respect to any request or demand for confidential information that was originally conveyed by the other defendant. Common Interest Agreement, Exh. B. at ¶ 6.

The Special Master concludes that Fuji's response – that it had fully complied with its discovery obligations – is correct given that the limited responsive information Fuji possessed was privileged and Fuji had no obligation to respond on Canon's behalf. Moreover, Fuji cannot be subject to sanctions under Rule 37 for Canon's failure to comply with discovery in the

16

absence of a finding that Fuji controlled Canon. *DeLetelier v. Republic of Chile*, 748 F.2d 790, 795 n.2 (2d Cir. 1984) ("Rule 37 sanctions ensure that a party will not benefit from non-compliance with discovery orders. Yet, one party to litigation will not be subjected to those sanctions because of the failure of another to comply with discovery, absent a showing that the other party controlled the actions of the non-complying party.") (emphasis added) (*citing* 4A J. Moore, *Moore's Federal Practice* ¶ 37.05 at 37-106, 107 (2d ed. 1984)); (*Vorachek v. Citizens State Bank of Lankin*, 421 N.W. 2d 45, 49 (N.D. 1988) ("generally a party will not be subject to sanctions for a co-party's failure to comply with discovery . . . ").

The Special Master therefore concludes that Fuji fully complied with its discovery obligations where it withheld clearly privileged information pursuant to properly asserted objections, and where there is no evidence to support any legal obligation on Fuji's part to address any deficiencies in Canon's compliance with Canon's discovery obligations.

## CONCLUSION

As a final matter, the Special Master addresses an argument urged throughout St. Clair's briefing, that being what Fuji *should* have done. Ignoring for a moment Fuji's contractual obligation to keep confidential information it learned pursuant to the joint defense agreement, it may be true that Fuji could have responded to St. Clair's August 13, 2004 letter (inquiring about any agreements with Mirage) by advising St. Clair what little Fuji knew about the "contingency license" agreement between Canon and Mirage. It may also be true that, had Fuji done so, the existence of the Consulting Agreement would have come to light in a timeframe that would have permitted St. Clair to pursue appropriate discovery.

Fuji's conduct cannot, however, be measured by what it could have done – or even aspirationally or ideally by what it should have done. Rather, Fuji's conduct must be measured by what it was required to do under the Federal Rules of Civil Procedure, the Local Rules of this

17

Court, the ethical rules that govern attorneys' professional conduct, and Fuji's contractual obligations to Canon under the joint defense agreement.

In this regard, the Special Master is informed and instructed by comments made by the Delaware Court of Chancery – although in a different context – in its recent opinion and order in *In re: The Walt Disney Company Derivative Litigation*, Consolidated C.A. No. 15452 at *1 (Del. Ch. Aug. 9, 2005) (Chandler, C.) [available as 2005 WL 2056651]:

> . . . aspirational ideals, however worthy as goals for human behavior, should not work to distort the legal requirements by which human behavior is actually measured.

The Special Master must agree and, therefore, recommends that the Court **DENY** St. Clair's request for sanctions, as it applies to the Fuji defendants.

The Special Master further recommends that St. Clair and Fuji share equally the costs associated with the Special Master's consideration of St. Clair's request for sanctions against the Fuji defendants, and that Fuji's Motion for Rule 11 Sanctions Against St. Clair, D.I. 964, be **DENIED**. Although St. Clair was unable to establish that Fuji had engaged in any sanctionable conduct whatsoever, the Special Master finds that the unusual circumstances created by Canon's conduct – and the Court's direction that the matter be investigated, informed and challenged through the adversarial discovery process – presented St. Clair with at least a colorable claim and required it to test the veracity of Fuji and its counsel.

**The Special Master's Report and Recommendations will become a final order of the Court unless objection is timely taken, pursuant to Fed. R. Civ. P. 53(g).**

ENTERED this
17th day of November, 2005

Vincent J. Poppiti  (DSBA No. 100614)
Special Master

062038.00610/40155848v.1